1  Stuart C. Talley, State Bar No. 180374
   **KERSHAW, CUTTER, & RATINOFF LLP**
2  401 Watt Avenue
   Sacramento, California 95864
3  Telephone: (916) 448-9800
   Facsimile: (916) 669-4499
4

5  Charles E. Ames
   **CHARLES E. AMES, P.C.**
6  2712 Timberleaf Drive
   Carrollton, Texas 75006-2103
7  Telephone: (214) 390-8111
   Facsimile: (214) 390-8112
8

9  Thomas A. Crosley
   **THE CROSLEY LAW FIRM, P.C.**
10 McCombs Plaza, Suite 250
   755 E. Mulberry
11 San Antonio, Texas 78212
   Telephone: (210) 354-4500
12 Facsimile: (210) 354-4034
13

14 Attorneys For Plaintiffs

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17 WILLIAM RYAN CROSLEY, Individually        Case No. 09
   and on behalf of himself and as Representative                    0290
18 of a Class of all others similarly situated,

19            Plaintiffs,                    **PLAINTIFF'S ORIGINAL CLASS
                                             ACTION COMPLAINT**
20
21            vs.

22 DEBT RESOLUTION PARTNERS, LLC;
   FREEDOM DEBT RELIEF, INC. and
23 FREEDOM DEBT RELIEF, LLC, aka
   FREEDOM DEBT RELIEF and FDR;
24 GLOBAL CLIENT SOLUTIONS, LLC;
   ROCKY MOUNTAIN BANK AND TRUST;
25 ANDREW HOUSSER; and BRADFORD
   STROH,
26
27            Defendants.                    **DEMAND FOR JURY TRIAL**

28

                                    -1-

ORIGINAL FILED

JAN 22 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

PJH

TO THE COURT:

COMES NOW Plaintiff WILLIAM RYAN CROSLEY, Individually on behalf of himself and on behalf of all others similarly situated, and complains of Defendants DEBT RESOLUTION PARTNERS, LLC ("DRP"); FREEDOM DEBT RELIEF, INC. and FREEDOM DEBT RELIEF, LLC, aka FREEDOM DEBT RELIEF and FDR ("FDR"); GLOBAL CLIENT SOLUTIONS, LLC ("GCS"); ROCKY MOUNTAIN BANK AND TRUST ("RMBT"); ANDREW HOUSSER ("HOUSSER"); and BRADFORD STROH ("STROH") as follows:

## **SUMMARY OF THE CASE**

1.      This is a class action lawsuit brought under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332. The Plaintiff, the debtor customer of Defendants Debt Resolution Partners, LLC; Freedom Debt Relief, Inc. and Freedom Debt Relief, LLC, aka Freedom Debt Relief and FDR; Global Client Solutions, LLC; Rocky Mountain Bank and Trust; Andrew Housser; and Bradford Stroh  (collectively the " FOUR PARTNERS and TWO CHIEF EXECUTIVE OFFICERS"), seeks to represent a class of debtors that have purchased regulated debt management services from the FOUR PARTNERS and TWO CHIEF EXECUTIVE OFFICERS.

2.      Plaintiff alleges that the FOUR PARTNERS and  TWO CHIEF EXECUTIVE OFFICERS operate an elaborate scheme to defraud debtors that are drowning in credit card and unsecured debt.   By masquerading as unregulated debt settlement negotiators, the FOUR PARTNERS, under the direction of Chief Executive Officers Housser and Stroh, attempt to escape strict state consumer protection regulations enacted to protect unknowing debtors.  The illegal scheme is more fully explained in the May 29, 2008 State of California Desist and Refrain Order issued against FDR, Housser, Stroh and other related entities.  (See California Desist and Refrain Order, Exhibit A attached and referred to herein).

3.      Plaintiff alleges that the services sold by the FOUR PARTNERS and TWO CHIEF EXECUTIVE OFFICERS are regulated under the Check Sellers, Bill Payers, and Proraters Law found in sections 12000 et seq. of the California Financial Code (the "CSBPPL")

4.      Plaintiff alleges that the FOUR PARTNERS and TWO CHIEF EXECUTIVE

-2-

1     OFFICERS have violated numerous provisions of the CSBPPL, by other things, attempting to
2     collect fees in excess of the maximum fees that are permitted under California Financial Code
3     Section 12314 and by operating without a valid license issued by the Department of Corporations.
4     Plaintiff alleges that defendants' contracts with Plaintiff and other similarly situated clients are
5     void under Section 12316 of the California Financial Code. Plaintiff seeks relief for these
6     violations under Business & Professions Code Section 17200, *et seq*. and the California
7     Consumer Legal Remedies Act.

8     **PARTIES**

9        5.     Plaintiff WILLIAM RYAN CROSLEY, is a citizen of Houston, Harris County,
10    Texas.

11       6.     Defendant DEBT RESOLUTION PARTNERS, LLC is a Delaware Limited
12    Liability Company with its principal offices located at 4945 S. Wendler Drive, Suite 105, Tempe,
13    AZ 85282. DRP advertises for and does business in the state of California and throughout the
14    United States.

15       7.     Defendants FREEDOM DEBT RELIEF, INC. and FREEDOM DEBT RELIEF,
16    LLC, aka FREEDOM DEBT RELIEF and FDR, are business entities with their principal offices
17    located at 1875 S. Grant, Suite 400, San Mateo, CA 94402. FDR advertises for and does business
18    in the state of California and throughout the United States.

19       8.     Defendant GLOBAL CLIENT SOLUTIONS, LLC is a Limited Liability
20    Company with its principal offices located at 9820 E. 41st Street, Suite 400, Tulsa, OK 74146.
21    GCS advertises for and does business in the state of California and throughout the United States.

22       9.     Defendant ROCKY MOUNTAIN BANK & TRUST is a chartered Colorado state
23    bank with its principal offices located at 101 E. Main St., Florence, CO 81226. RMBT maintains
24    a branch bank at 755 Cheyenne Meadows Rd., Colorado Springs, CO 80906, where it houses the
25    Global Client Solutions, LLC Special Purpose Account Operations for Freedom Debt Relief and
26    Debt Resolution Partners, LLC. GCS advertises for and does business in the state of California
27    and throughout the United States.

28       10.     Defendant ANDREW HOUSSER is an individual, founder and Co-CEO of FDR

and DRP with his principal offices located at 1875 S. Grant, Suite 400, San Mateo, CA 94402. HOUSSER advertises for and does business in the state of California and throughout the United States.

11. Defendant BRADFORD STROH is an individual, founder and Co-CEO of FDR and DRP with his principal offices located at 1875 S. Grant, Suite 400, San Mateo, CA 94402. STROH advertises for and does business in the state of California and throughout the United States.

12. Plaintiff is informed and believes and therefore alleges that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between all of the defendants such that any individuality and separateness between the defendants has ceased, and that each defendant is the alter ego of each of the other defendants and that at all times herein mentioned each of the defendants was a mere shell, instrumentality and conduit of each of the other defendants.

13. Adherence to the fiction of the separate existence of the defendants as individual entities would permit an abuse of the corporate privilege and would promote injustice by protecting defendants from liability for damages for the wrongful acts alleged herein.

14. Plaintiff is informed and believes and therefore alleges that each of the defendants owned, operated, managed, maintained, and controlled the activities of each of the other defendants. Therefore, the activities, acts, and omissions of defendants were and are, in reality, the activities, acts, and omissions of each of the other defendants.

15. Unless otherwise alleged, at all relevant times, defendants, and each of them, were the agents and employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of these agents.

16. The plaintiff is further informed and believes and therefore alleges that each of the defendants were co-conspirators in a conspiracy designed to commit the acts alleged herein.

**INTRADISTRICT ASSIGNMENT**

17. Pursuant to Local Rule 3-5(b), assignment to the San Francisco Division is proper

-4-

because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## JURISDICTION AND VENUE

18. This court has original jurisdiction over the lawsuit because the action arises under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332. Upon information and belief, the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and is a class action involving 100 or more potential class members in which any member of the class of plaintiffs is a citizen of a state different from any defendant.

19. Further, this court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. The Plaintiff is citizen of the state of Texas and the Defendants maintain home offices in the states of California, Oklahoma and Colorado.

20. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district and the unfair business practices alleged herein emanated from the state of California.

21. Debt Resolution Partners, LLC attempts to stipulate that any controversy, claim or dispute between the parties, including the termination of the scope or applicability to arbitrate, shall be determined by arbitration.

22. As plead herein, defendants' agreements with the Plaintiff and putative class members are void in their entirety and, as such, the arbitration provision is unenforceable. Additionally, the arbitration provision as drafted, is unconscionable under California law.

23. Specifically, California Financial Code Section 12000 provides that:

> "No persona shall engage in the business, for compensation, of selling checks, drafts, money orders or other commercial papers serving the same purpose, or of receiving money as agent of an obligor for the purpose of paying bills, invoices, or accounts of such obligor, or acting as a prorater, nor shall any person, without direct compensation and not as an authorized agent for a utility company, accept money for purpose of forwarding it to others in payment of utility bills, without first obtaining a license from the commissioner."

-5-

24. Financial Code Section 12002.1 defines a "prorater" as

"a person who, for compensation, engages in whole or in part in the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor."

25. The contractual services provided by the Defendants fall squarely within the definition of a Prorater. Specifically, the DRP Debt Reduction Agreement provides in part: "DRP will act as an intermediary between Client and Client's creditors for the express purpose of attempting to negotiate with creditors of Client with the intent of reducing Debts to an amount that will enable Client to pay the reduced balance as full settlement of all debt." "DRP will inform the Client of the amounts and the terms and conditions of all written settlement agreements." "Beginning on [date] Client agrees to budget $ [amount] per month. These funds are to be made available each month for transfer into Client's Special Purpose Account ("SPA") [at RMBT], which will be opened by Client per the [GCS] Authorization to Debit Bank Account which is attached with this Agreement. Funds in Client's [RMBT] SPA will accrue to eventually be used for the settlement of Client's debts and for the payment of DRP's fees. Funds to be used for settling Client's debts to creditors will be distributed from Client's [RMBT] SPA directly to creditors after each settlement is finalized." (*See* Crosley DRP Debt Reduction Agreement, Exhibit B attached.)

26. Despite engaging in the business of a prorater, none of the defendants are licensed by the State of California. As such, the defendants' contracts and their unconscionable arbitration provisions are void as a matter of law.

27. Additionally, defendants' contracts violate California Financial Code Section 12314 which sets maximum amounts a prorater can collect from consumers for its service. Specifically the amount is limited as follows:

"The total charges received by a prorater . . . may not exceed in the aggregate twelve percent (12%) for the first three thousand dollars ($3,000), eleven percent (11%) for the next two thousand dollars ($2,000), and ten percent (10%) for any of the remaining payments distributed by a prorater to the creditors of a debtor."

28. Despite this provision, defendants' contracts require debtors to pay a "retainer fee"

-6-

and "service fee" equal to 15% of the "total debt owed" by the client at the time of executing the contract.

29. California Financial Code Section 12316 provides that "if a prorater contracts for, receives or makes any charge in excess of the maximum permitted by this division . . . the prorater's contract with the debtor shall be void and the prorater shall return to the debtor all charges received from the debtor." As such, the defendants' contracts and their unconscionable arbitration provisions are void as a matter of law.

30. Despite Defendant Debt Resolution Partners, LLC's contractual attempts to have the Plaintiff subject to arbitration to redress wrongs that the FOUR PARTNERS and TWO CHIEF EXECUTIVE OFFICERS have committed, the Plaintiff and the similarly situated putative class members are entitled to the jurisdiction of this court, and venue in this district.

## FACTUAL ALLEGATIONS

31. Defendants Debt Resolution Partners, LLC, Freedom Debt Relief, Global Client Solutions, LLC and Rocky Mountain Bank and Trust under the direction of co-CEO's Housser and Stroh advertise for and sell services throughout the United States to consumers that are in need of debtor assistance.

32. Defendants' websites, advertisements or solicitation materials state:

> Our "Debt Reduction Program" is an inno9vative solution for consumers struggling with large debt burdens. FDR uses debt negotiation to dramatically lower both your debt levels and your monthly payments . . .
>
> We can help you save more money than simple consumer Credit Counseling while protecting you from the harsh impacts of bankruptcy.
>
> • Be debt free in as little as 12-36 months!
>
> • Lower debts down to as low as 50% of what you owe!
>
> • Service Fee Money Back Guarantee
>
> • Better alternative to bankruptcy, debt consolidation or credit counseling
>
> • One Simple Monthly Payment

33. Defendants also use toll free telephone numbers and advertise through print and

-7-

other media in which they claim that they can negotiate a reduction in the amount a consumer owed to his or her unsecured creditors by 40-60%, which would enable a consumer to pay off their debts for substantially less than the amount owed. The ads or websites tell consumers to contact defendants for a description of their services of reducing credit card debt for an individual consumer. Defendants invite consumers to FILL OUT A QUICK ONLINE FORM to "Get A Free Quote To See How Quickly You Can Be Completely Debt Fee" in 12-36 months.

34. As the contracting partner, DRP establishes the debtor client relationship with a Debt Reduction Agreement that arises from the marketing efforts of its sister company, Freedom Debt Relief. The agreement sets forth the duties of the FOUR PARTNERS as directed by co-CEO's Housser and Stroh and the client's responsibilities. (*See* Exhibit B.)

35. After observing defendants' advertising, plaintiff Crosley entered into a Debt Reduction Agreement with Defendant Debt Resolution Partners, LLC on or about February 14, 2008 as described herein. The contract was initiated by John Lehmann, Senior Debt Consultant, with Freedom Debt Relief with a monthly draft start date of February 22, 2008 in the amount of $1,860 for 35.9 estimated months. To date, Crosley has paid over $16,000 into the DRP SPA account at RMBT. (*See* Exhibit B.)

36. The DRP agreement provides that the client will pay monthly amounts to Partner GCS by bank draft to a Special Purpose Account (SPA) managed by partner RMBT. The DRP agreement provides that "[f]unds in Client's SPA will accrue to eventually be used for the settlement of Client's debts and for the payment of DRP's fees." The agreement provides that DRP's 5% retainer and 10% of enrolled debt unearned service fees are collected monthly and paid over to DRP before any creditor negotiation activity begins.

37. The role of partners GCS and RMBT is to give the appearance of outside, independent client settlement fund custodians under the control of the client and not subject to state consumer credit regulations. In reality, the client has no control except to stop the monthly drafts of GCS. The funds are under the control of the FOUR PARTNERS and TWO CHIEF EXECUTIVE OFFICERS, where they collect their maximum fees upfront and distribute any debt settlements that might later be made.

38.     Before any attempt to contact creditors to begin the settlement negotiation process is made, DRP delays many months until it has collected its retainer, unearned service fees, and a substantial portion of the client's enrolled unsecured debt.   In the interim, the client is left to suffer the creditors' continued collection efforts and possible lawsuits.  As a result of the monthly cash disbursements to the client's DRP controlled SPA account at RMBT, rather than to creditors, the client becomes further insolvent.   Should the client become unable to make the monthly payments or become disgusted with DRP's lack of settlement progress and terminate the agreement, DRP's money-back guarantee becomes null and void, and DRP has the right to terminate the agreement without any refund obligation to the client.  (*See* Exhibit B.)

39.     To protect consumers needing professional debtor assistance, such as the Plaintiff, California enacted the Check Sellers, Bill Payers, and Proraters Law found in sections 12000 et. seq. of the California Financial Code.   The CSBPPL prohibits proraters, such as the FOUR PARTNERS and TWO CHIEF EXECUTIVE OFFICERS, from providing their services without first complying with the Code.

40.     The CSBPPL prohibits, among other things, engaging in the business of prorating without first obtaining a license from the state of California (Ca Fin. Code Section 12000); entering into contracts that seek excessive fees (Ca Fin. Code Section 12314); accepting any fee unless 51% of creditors consent to the fee (Ca Fin. Code Section 12315); charging any cancellation fee or termination penalty (Ca Fin. Code Section 12314.1).  Additionally, the statue provides that proraters shall notify all creditors in writing within five days of entering into a prorating agreement that it is providing services to the debtor and the notice shall state the proposed monthly payment to made by the creditor (Ca Fin. Code Section 12315.1).

41.     The records of the California Department of Corporations do not indicate that the FOUR PARTNERS and TWO CHIEF EXECUTIVE OFFICERS have obtained a license to provide prorating services.  Additionally, defendants' contracts seek excessive fees and provide for early termination penalties when consumers prematurely withdraw from their program. Additionally, it is not the defendants' practice to contact creditors within 5 business days of entering contracts with Class Members or to obtain the consent of creditors before taking their

-9-

fees.

42. Plaintiff is entitled to and asserts claims individually and on behalf of other similarly situated DRP debtor clients for recovery of all fees paid, reasonable attorney's fees, actual damages, punitive damages for acts or practices under a void agreement, and cost of the action, including reasonable attorneys' fees.

### CLASS ACTION ALLEGATIONS

43. Under Federal Rule of Civil Procedure 23, Plaintiff William Ryan Crosley brings this action on behalf of himself and all others similarly situated. The class that the named Plaintiff seeks to represent is composed of:

> **All consumers in the United States that are now or have been at any time since January 2004, debtors that have executed a Debt Reduction Agreement with any defendant named herein.**

44. Upon information and belief, Plaintiff alleges that the Plaintiff Class is so numerous that joinder of all members would be impracticable. The exact size of the putative class, and the identity of the members of the class, are expected to be ascertainable from the records of the Defendants.

45. Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including, *inter alia*, the following:

46. Whether the acts of the Defendants Debt Resolution Partners, LLC, Freedom Debt Relief, Global Client Solutions, LLC, Rocky Mountain Bank and Trust, Andrew Housser and/or Bradford Stroh violated the CSBPPL and as a result the contracts with the Plaintiffs are void entitling the Plaintiffs to recover all fees paid, costs, and reasonable attorney's fees;

47. Whether the acts of the Defendants Debt Resolution Partners, LLC, Freedom Debt Relief, Global Client Solutions, LLC, Rocky Mountain Bank and Trust, Andrew Housser and/or Bradford Stroh violated the California Consumer Remedies Act and the California Business & Professions Code section 17200, *et seq.*, that the acts were unfair, unconscionable and deceptive, entitling the Plaintiffs to actual damages, punitive damages, costs, reasonable attorney's fees based on the amount of time involved, and

48. Whether Plaintiffs and the other members of the putative class suffered damages

1   by reason of the unlawful, unfair and/or fraudulent conduct of Defendants Debt Resolution

2   Partners, LLC, Freedom Debt Relief, Global Client Solutions, LLC, Rocky Mountain Bank and

3   Trust, Andrew Housser and/or Bradford Stroh.

4       49.     The claims asserted by Plaintiffs in this action are typical of the claims of the

5   members of the putative class as described above, the claims arise from the same course of

6   conduct by the Defendants, and the relief sought is common.

7       50.     Plaintiffs will fairly and adequately represent and protect the interests of the

8   members of the Plaintiff Class.  Plaintiff has retained counsel competent and experienced in both

9   consumer protection and class action litigation.

10      51.     A class action is superior to other methods for the fair and efficient adjudication of

11  this controversy, since joinder of all members is impracticable.  Furthermore, because the

12  economic damages suffered by the individual class members may be relatively modest, albeit

13  significant compared to the expense and burden of individual litigation, it would be impracticable

14  for members of the Putative class to seek redress individually for the wrongful conduct alleged

15  herein.  There will be no undue difficulty in the management of this litigation as a class action.

16                          **CAUSES OF ACTION**

17                          **FIRST CLAIM FOR RELIEF**
            **(For Violations of the Consumers Legal Remedies Act, Cal.Civ.Code §§ 1750 *et seq.*)**
18

19      52.     Plaintiff hereby incorporates all proceeding paragraphs as if they were fully set

20  forth herein.

21      53.     Defendants are "persons" within the meaning of Civil Code §§ 1761(c) and 1770,

22  and sell "services" within the meaning of Civil Code §§ 1761(b) and 1770.

23      54.     Plaintiff and the Class members are consumers within the meaning of Civil Code §

24  1761(d).

25      55.     Plaintiff's purchase of prorater services as sold by Defendants constitutes a

26  transaction within the meaning of Civil Code §§ 1761(e) and 1770.

27      56.     Defendants' conduct violated and continues to violate the CLRA in at least the

28  following respects:

                              -11-

a. In violation of section 1770(a)(17) of the CLRA, Defendants inserted an unconscionable provision in a contract.

57. Defendants engaged in these unfair or deceptive acts and practices with the intent that they result, and which did result, in the sale of prorater services to Plaintiff and the Class.

58. As a result of Defendants' acts and practices as alleged in this Complaint, Plaintiff seeks an Order enjoining Defendants from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited by law. Plaintiff has contemporaneous with this filing provided notice to Defendants pursuant to Civil Code § 1782(a), and will amend to add claims for damages under the CLRA if Defendants do not take appropriate corrective action.

59. The conduct of the defendants as alleged herein was fraudulent, oppressive, and done with the intent to harm plaintiff and members of the Class. As such, plaintiff and the Class are entitled to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
#### (For Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq*.)

60. Plaintiff hereby incorporates all proceeding paragraphs as if they were fully set forth herein.

61. Defendants' acts and practices, described herein, constitute unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200, *et seq* ("UCL").

62. The utility of Defendants' marketing and/or sale of its prorater services is significantly outweighed by the gravity of the harm it imposes on Plaintiff and the Class. Defendants' acts and practices are oppressive, unscrupulous or substantially injurious to consumers.

63. The above-described unfair, unlawful and fraudulent business practices conducted by Defendants present a threat and likelihood of harm and deception to members of the Class in that Defendants have systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

64. Defendants' acts and practices constitute unlawful business practices in violation

-12-

1    of Business and Professions Code §§ 17200, *et seq.*, because, among other things, they violate the

2    California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*, and because they

3    violate the CSBPPL as outlined above.

4        65.    Plaintiff and the Class have suffered harm as a proximate result of the wrongful

5    conduct of the Defendants alleged herein, and therefore bring this claim for relief for restitution

6    and disgorgement.  Plaintiff is a person who has suffered injury in fact and has lost money and

7    property as a result of defendants' unfair competition.

8        66.    Pursuant to Business and Professions Code §§ 17200, 17203, and California

9    Financial Code § 12316 Plaintiff, on behalf of himself and the Class, seeks an order of this Court:

10   a) declaring the Defendants' contracts with the class null and void; and b) enjoining Defendants

11   from continuing to engage in the business of prorating and charging unconscionable and

12   excessive service fees.   Plaintiff further requests an order awarding Plaintiff and the Class

13   restitution and disgorgement of all fees paid to Defendants by the Class so as to deter Defendants

14   and to rectify Defendants' unfair and unlawful practices and to restore any and all monies to

15   Plaintiff and the Class, which are still retained by Defendants, plus interest and attorneys' fees

16   and costs pursuant to, *inter alia*, Code of Civil Procedure section 1021.5.

17                          **FOURTH CLAIM FOR RELIEF**
                                    **(Negligence)**
18

19       67.    Plaintiff hereby incorporates all proceeding paragraphs as if they were fully set

20   forth herein.

21       68.    As alleged herein, defendants had a duty to contact creditors of the plaintiff and

22   the Class within 5 days of the execution of the defendants' debt reduction agreement and to

23   advise creditors of the minimum monthly payment that the plaintiff intended to pay.  (Ca Fin.

24   Code Section 12315.1.)

25       69.    Plaintiff is informed and believes and, therefore, alleges that defendants breached

26   this duty with respect to plaintiff and the Class by customarily and regularly failing to contact

27   creditors in a timely fashion.

28       70.    As a result of this breach of duty, plaintiff and the Class have been damaged in

-13-

1  amount to be proven at trial.

2  **PRAYER FOR RELIEF**

3  WHEREFORE, Plaintiff on behalf of himself and all others similarly situated, prays for

4  judgment against Defendants as follows:

5  1.  For an order certifying the Class under Federal Rule of Civil Procedure 23, and

6  appointing Plaintiff and his counsel to represent the Class under Federal Rule of Civil Procedure

7  23(g);

8  2.  For declaratory and equitable relief requested;

9  3.  For compensatory, equitable and/or restitutionary damages according to proof and

10  for all applicable statutory damages;

11  4.  For punitive damages;

12  5.  For an award of attorneys' fees and costs;

13  6.  For prejudgment interest and the costs of suit; and

14  7.  For such other and further relief as this Court may deem just and proper.

15  Dated: _1 - 22 - 09_ .          Respectfully submitted,

16          KERSHAW, CUTTER, & RATINOFF, LLP

18          By: _____
                    STUART C. TALLEY

20          CHARLES E. AMES
            CHARLES E. AMES, P.C.
            2712 Timberleaf Drive
21          Carrollton, TX 75006-2103
            Tel. (214) 390-8111 / Fax. (214) 390-8112

23          THOMAS A. CROSLEY
            THE CROSLEY LAW FIRM, P.C.
            McCombs Plaza, Suite 250
24          755 E. Mulberry
            San Antonio, TX 78212
25          Tel. (210) 354-4500 / Fax. (210) 354-4034

26          ATTORNEYS FOR THE PLAINTIFF AND THE
            PUTATIVE PLAINTIFF CLASS

-14-

1

## DEMAND FOR JURY TRIAL

2   Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and

3   demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues. The

4   jury fee is paid with the filing of this complaint.

5   Dated: _____*1 - 22 -09*_____.        Respectfully submitted,

6                                             KERSHAW, CUTTER, & RATINOFF, LLP

7

8                                             By: _____
                                                        STUART C. TALLEY
9

10                                            CHARLES E. AMES
                                              CHARLES E. AMES, P.C.
11                                            2712 Timberleaf Drive
                                              Carrollton, TX 75006-2103
12                                            Tel. (214) 390-8111 / Fax. (214) 390-8112

13                                            THOMAS A. CROSLEY
                                              THE CROSLEY LAW FIRM, P.C.
14                                            McCombs Plaza, Suite 250
                                              755 E. Mulberry
15                                            San Antonio, TX 78212
                                              Tel. (210) 354-4500 / Fax. (210) 354-4034

16                                            ATTORNEYS FOR THE PLAINTIFF AND THE
                                              PUTATIVE PLAINTIFF CLASS
17

18

19

20

21

22

23

24

25

26

27

28

-15-

1    **<u>DECLARATION OF STUART C. TALLEY PURSUANT TO CIVIL CODE § 1780(c)</u>**

2

3    I, STUART C. TALLEY, declare as follows:

4       1.      I am an attorney at law duly licensed to practice before all courts of the State of

5    California, and am an associate in the firm of Kershaw, Cutter, Ratinoff & York, counsel of

6    record for Plaintiffs.  I have personal knowledge of the matters set forth below and if called as a

7    witness could and would competently testify thereto.

8       2.      I am informed and believe that venue is proper in this court under Civil Code §

9    1780(c) based on the following facts:

10               (a) Defendants have performed transactions at issue in this action, or have obtained

11                    financial benefit from such transactions, at all times relevant to this action, in Los

12                    Angeles County; and

13               (b) At all relevant times herein, Plaintiffs resided in Los Angeles and Ventura County.

14          I declare under penalty of perjury under the laws of the state of California that the

15    foregoing is true and correct and that this declaration was executed on January 22, 2009, in

16    Sacramento, California.

17

18                                              STUART C. TALLEY

19

20

21

22

23

24

25

26

27

28

-16-

# EXHIBIT A

State of California - Department of Corporations

**STATE OF CALIFORNIA**
**BUSINESS, TRANSPORTATION AND HOUSING AGENCY**
**DEPARTMENT OF CORPORATIONS**

TO:   Freedom Financial Network, LLC
      Freedom Debt Relief, Inc; Freedom Debt Relief, LLC; Freedom Debt Relief; FDR
      Alivio Holdings, LLC
      Bills.com, Inc.; Bills.com, LLC; Bills.com
      Freedom Tax Relief, LLC
      Alivio Mortgage, LLC
      1875 S. Grant Street
      San Mateo, California 94402

      Andrew Housser, Founder and Co-CEO of Freedom Financial Network, LLC
      285 Ridgeway Road
      Woodside, California 94062

      Bradford Stroh, Founder and Co-CEO of Freedom Financial Network, LLC
      25 Saddleback Drive
      Portola Valley, California 94028

**DESIST AND REFRAIN ORDER**
**(For violations of sections 12200, 22104, 22153 and 22154 of the Financial Code)**

The California Corporations Commissioner ("Commissioner") finds that:

1.  In 2002 Andrew Housser ("Housser") and Bradford Stroh ("Stroh") founded Freedom Financial Network, LLC ("FFN"), a Delaware limited liability company, and during all relevant times acted as its co-chief executive officers. Previously, Housser worked for Lorantec Systems, a suspended California corporation, and for Abenona Networks, Inc., a dissolved corporation, both of which were located at the same address, 1052 Penleton Avenue, Sunnyvale, California. On March 10, 2003, FFN first filed with the California Secretary of State's Office its articles of organization.

2.  FFN operates in Sacramento, California and Tempe, Arizona, but has its headquarters at 1875 S. Grant Street, San Mateo, California. Other entities co-located with FFN's include, but are not limited to, Alivio Holdings, LLC; Alivio Mortgage, LLC; Bills.com; Bills.com, Inc.; Bills.com LLC; FDR; Freedom Debt Relief; Freedom Debt Relief, Inc.; Freedom Debt Relief, LLC; Freedom Mortgage; and Freedom Tax Relief, LLC. FFN and affiliated entities are in violation of the laws found in the California Financial Code that govern proraters, bill payers, finance lenders and brokers.

State of California - Department of Corporations

3.   Housser and Stroh state that FFN is the umbrella company and that its five divisions include: "Bills.com, Freedom Debt Relief, Freedom Tax Relief, Freedom Student Loans and Freedom Mortgage". Housser and Stroh represent they began business in late 2002 and Stroh states, "we're already one of the biggest companies in the industry. And we're doing well."

4.   FFN and its affiliates solicit consumers via the Internet on sites they developed and maintain that include, but are not limited to, www.bills.com, www.freedomdebtrelief.com, www.freedomdebt.net, and www.financialfreedomnetwork.com. They also use toll free telephone numbers and advertise through print and other media.

5.   During all relevant times Doug Nunes ("Nunes") acted as an adviser to Housser, Stroh and Freedom Debt Relief. Nunes is featured and quoted in materials that Housser and Stroh presented to the public. However, they failed to disclose to consumers that on October 25, 2002, the Commissioner issued a Desist and Refrain Order for unlicensed activities to Nunes, President of AmeriDebt, Inc. and AmeriDebt pursuant to the California Check Sellers, Bill Payers, and Proraters Law. The Commissioner's Order issued to them was not contested and continues to remain in effect.

6.   On March 18, 2003, Housser filed a fictitious business name statement for his company, Freedom Debt Relief. Housser described Freedom Debt Relief's business as "Credit & Debt Counseling Services".

7.   On September 9, 2003, Housser filed with the California Secretary of State's Office documents for Freedom Debt Relief, Inc., stating it is a non-profit corporation located at 1875 S. Grant Street, San Mateo, California. However, on June 29, 2006, the California Secretary of State suspended Freedom Debt Relief, Inc., for its failure to comply with legal requirements of the California Corporations Code and tax provisions. Freedom Debt Relief, Inc. continued to remain a suspended California corporation until the San Mateo's District Attorney's Office inquired about the company in 2007. After these inquiries by the District Attorney's Office Freedom Debt Relief, Inc. was revived as a non-profit corporation and contemporaneously dissolved on February 1, 2008.

8.   In addition to forming Freedom Debt Relief, Inc., Housser filed articles of organization on October 29, 2004, with the California Secretary of State's Office documents for Freedom Debt Relief, LLC, stating it was a Delaware limited liability company.

State of California - Department of Corporations

9. Freedom Debt Relief, Inc. and Freedom Debt Relief, LLC also use the business names "Freedom Debt Relief" and "FDR" and operate in the same offices, through their affiliates and their websites. The websites that describe the debt reduction program of Freedom Debt Relief offered to consumers does not disclose whether the debt reduction program is with Housser's fictitious business name, Freedom Debt Relief, Freedom Debt Relief, Inc., Freedom Debt Relief, LLC, (hereinafter, "Freedom Debt Relief") or one of their affiliates. The websites for FFN and Freedom Debt Relief are linked, are similar in appearance and content and offer a "Debt Reduction Guarantee" that a consumer will be completely debt free in as little as 12-36 months. Freedom Debt Relief's website states:

> Our "Debt Reduction Program" is an innovative solution for consumers struggling with large debt burdens. FDR uses debt negotiation to dramatically lower both your debt levels and your monthly payments. . .
>
> We can help you save more money than simple consumer Credit Counseling while protecting you from the harsh impacts of bankruptcy.
>
> - Be debt free in as little as 12-36 months!
> - Lower debts down to as low as 50% of what you owe!
> - Service Fee Money Back Guarantee
> - Better alternative to bankruptcy, debt consolidation or credit counseling
> - One Simple Monthly Payment

These websites also include "testimonials" from consumers but completely fail to mention the numerous complaints received about Freedom Debt Relief's services, including those filed with the Better Business Bureau ("BBB"). The BBB has processed at least 110 complaints from consumers about Freedom Debt Relief and nine (9) complaints about Freedom Tax Relief and their business practices. Consumers' complaints concern the exorbitant fees they were charged, non-settlement of debts, failure to communicate with them or their creditors, lack of refunds, etc.

10. FDR, Freedom Debt Relief, Freedom Debt Relief, Inc., and Freedom Debt Relief, LLC in concert or participation with others begin the debt settlement process for a consumer only after they have obtained extensive and detailed personal and financial information about a consumer's identity, credit cards and bank accounts.

/ / /

State of California - Department of Corporations

1    11. In exchange for the future services that they promise to provide to a consumer the
2    above-named entities immediately begin to charge and require payment of several fees. A
3    consumer must pay (1) a "retainer fee" exceeding several hundred dollars due in several monthly
4    installments and (2) a separate "service fee" payable in installments for over a year until the total
5    retainer and service fees of approximately 15% of the consumer's debt have been received. The
6    "retainer fee" and "service fee" are combined and included as part of a consumer's single monthly
7    payment. Freedom Debt Relief requires a consumer to pay their retainer and service fees by
8    authorizing automatic withdrawals (debits) from a consumer's bank account each month via
9    electronic debit or automatic check relay. Moreover, in connection with one's debt reduction
10   program a consumer must pay numerous additional fees including activation fees, maintenance
11   fees, ACH electronic check fees, ACH deposit fees, phone pay fees, miscellaneous fees, etc.

12   12. Regarding consumers' funds earmarked for their creditors, Freedom Debt Relief states
13   it is affiliated with and operates in connection with other entities, including Global Client Solutions,
14   LLC, which is not presently and never has been a bona fide financial institution.

15   13. A consumer is required to provide Freedom Debt Relief with a power of attorney that
16   requires the consumer to grant to Freedom Debt Relief, its agents, assigns (including Global Client
17   Solution, LLC) as an "attorney-in fact" full power and authority to do and perform each and every
18   act and thing which may be necessary, or convenient in connection with any handling of a
19   consumer's financial settlements with a consumer's creditors. Thus, a consumer is required to fully
20   authorize Freedom Debt Relief and its agents to act as his or her attorney-in-fact and to authorize
21   them complete access to withdraw and disburse funds from his or her bank accounts.

22   14. One of the other "divisions "of FFN is Freedom Tax Relief, LLC, a Delaware limited
23   liability company, which filed with the California Secretary of State's Office on October 29, 2004.
24   Freedom Tax Relief, LLC operates at 1875 S. Grant Street, San Mateo, California and via its
25   website, freedomtaxrelief.com. Freedom Tax Relief, LLC offers to provide consumers bill paying
26   services that include ACH processing, returned check processing, and credit card processing.
27   / / /
28   / / /

State of California - Department of Corporations

15. In 2005 Housser and Stroh created Alivio Holdings, LLC. It acts as FFN's parent entity and holding company and is also located at 1875 S. Grant Street, San Mateo, California. Alivio Holdings, LLC first filed with the California Secretary of State's Office on January 10, 2005. Housser and Stroh are the only members and managers of Alivio Holdings, LLC.

16. On November 14, 2005, Alivio Holdings, LLC arranged for Bills.com to provide bill payment services. Housser stated his companies, Alivio Holdings, LLC and FFN, were very excited about the acquisition of Bills.com and saw it as a key step in enhancing their brand and profile in the consumer debt management industry. Housser also stated they "were looking forward to entering the fast growing bill payment space."

17. On June 21, 2006, Housser filed articles of incorporation with the California Secretary of State's Office for Bills.com, Inc., showing its business address as 1875 S. Grant Street, San Mateo, California. On February 1, 2008, Housser filed a statement with the California Secretary of State's Office listing himself as the president of Bills.com, Inc.

18. Two months after creating Bills.com, Inc, on August 7, 2006, Housser filed articles of organization with the California Secretary of State's Office for Bills.com, LLC. Housser listed himself as its member and manager of this limited liability company and stated its business address was also located at 1875 S. Grant Street, San Mateo, California. Housser described the business of Bills.com, LLC as "debt negotiation services."

19. Bills.com advertised on FFN's website that it offers a comprehensive Resource Center on many different financial topics and provides various debt consolidation sources. Bills.com also offers services that include debt consolidation, mortgage refinancing, bill payments, payment protection insurance, and consolidated credit card bill payments. Both Housser and Stroh provide audiovisual presentations to consumers on Bills.com's website. FFN's website also provides a link to the website for Bills.com. The Bills.com website fails to disclose if it is for Bills.com Inc. or Bills.com, LLC or both entities. Bills.com states that since 2002 it has served more than 30,000 customers nationwide while managing more than $500 million in consumer debt.

/ / /

/ / /

20. On September 4, 2007, Housser obtained from the California Department of Real Estate ("DRE") a real estate broker's license (DRE number 01815317) for Bills.com, Inc. Housser also has a real estate license (DRE number 01758735) and is the designated officer of the corporation, Bills.com, Inc. The locations for both Housser's personal California real estate license and the California real estate broker's license for Bills.com, Inc. are at 1875 Grant Street, San Mateo, California.

21. Affiliated with both Freedom Debt Relief and FFN is Alivio Mortgage, LLC, a Delaware limited liability company that filed with the California Secretary of State's Office on October 29, 2004. It is also located at 1875 Grant Street, San Mateo, California. Alivio Mortgage, LLC is 100% owned by Alivio Holdings, LLC.

22. On September 19, 2005, Alivio Mortgage, LLC applied for a license as a California Finance Lender and Broker from the Commissioner of the California Department of Corporations, which has jurisdiction over and regulates finance lenders and brokers pursuant to the California Finance Lenders Law ("CFLL") found in California Financial Code section 22000 et seq.

23. On December 13, 2005, the Commissioner granted a license as a finance lender and broker (Department of Corporations CFLL File No 605-3240) to Alivio Mortgage, LLC, which is conditioned on its compliance with the applicable provisions of the Financial Code. After being granted the license Alivio Mortgage, LLC moved its location without approval from the Department as required by Financial Code section 22153. In fact, Alivio Mortgage, LLC did not even inform the Department about its desire to change its place of business and violated Financial Code section 22153.

24. Alivio Mortgage, LLC as a licensee was required at all times to maintain a minimum net worth of at least $25,000 pursuant to Financial Code section 22104. Alivio Mortgage, LLC's income statement for 2007 shows a net loss of over $115,000. Its balance sheet dated December 31, 2007, shows it failed to meet the statutory net worth requirement and instead had a net worth deficiency of over $4,600. Alivio Mortgage, LLC is in violation of Financial Code section 22104.

/ / /

/ / /

State of California - Department of Corporations

State of California - Department of Corporations

1       25.  Alivio Mortgage, LLC, co-located with the other above described businesses of

2   Housser and Stroh, conducted business at a place in which business other than making loans is

3   engaged in without either written notification to and the authorization of the Department, which is

4   in violation of Financial Code section 22154.

5       26.  Alivio Mortgage, LLC advertises its mortgage services as mortgage brokers, mortgage

6   companies and real estate loans through the Yellow Pages. Alivio Mortgage, LLC marketed its

7   services via the Internet, a call center and through other organizations. Alivio Mortgage, LLC did

8   not disclose to the Commissioner its advertisement materials, including its website as required,

9   which is in violation of California Code of Regulations section 1550.

10       27.  Consumers complained that they were sued even though FDR, Freedom Debt Relief,

11   Freedom Debt Relief, Inc., or Freedom Debt Relief, LLC were purportedly contacting their

12   creditors to negotiate settlement of the consumers' respective debts. After consumers contracted

13   with FDR, Freedom Debt Relief, Freedom Debt Relief, Inc., or Freedom Debt Relief, LLC to

14   negotiate with creditors and after consumers were sued by their creditors then Alivio Mortgage,

15   LLC would offer its services to consumers in the form of loans (new and additional debt owed by

16   consumers) that would enable consumers to pay their creditors who sued them.

17       28.  On April 2, 2008, Housser filed with the California Secretary of State's Office for his

18   Company, Freedom Lending, LLC, listing its address at 1875 S. Grant Street, San Mateo, California.

19       29.  The Department of Corporations has jurisdiction over and regulates bill payers and

20   proraters under the Check Sellers, Bill Payers and Proraters Law ("CSBPPL") set forth in California

21   Financial Code section 12000 et seq. California Financial Code section 12200, states:

22

23       No person shall engage in the business, for compensation, of selling

    checks, drafts, money orders, or other commercial paper serving the

24       same purpose, or of receiving money as agent of an obligor for the

    purpose of paying bills, invoices, or accounts of such obligor, or acting

25       as a prorater, nor shall any person, without direct compensation and

    not as an authorized agent for a utility company, accept money for the

26       purpose of forwarding it to others in payment of utility bills, without

    first obtaining a license from the commissioner.

27

28

The definition of proraters, found in Financial Code section 12002.1, states:

> A prorater is a person who, for compensation, engages in whole or in part in the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor.

30. All non-exempt bill payers and proraters in this state are required to be licensed by the Commissioner. FDR, Freedom Debt Relief, Freedom Debt Relief, Inc., Freedom Debt Relief, LLC, FFN; Freedom Tax Relief, LLC, Bills.com, Inc.; Bills.com, LLC; Bills.com; Housser, Stroh and their affiliates can not satisfy the criteria to meet any statutory exemption from the CSBPPL licensing requirement. Thus, during all relevant times they have been unlicensed and unauthorized to act as either bill payers or proraters in the State of California.

31. Additionally, Freedom Debt Relief and FFN are unlicensed in other states. For example, in November 2007, the Rhode Island Department of Business Regulation's Division of Banking issued an order to Freedom Debt Relief and FFN to immediately cease and desist their unlicensed debt management plan activities in their state and ordered them to refund all fees received relating to all debt management plans currently being serviced. Neither Freedom Debt Relief nor FFN have disclosed the existence of the Rhode Island's Cease and Desist Order to consumers or the public.

32. Alivio Mortgage, LLC is the only entity described above licensed by the Department of Corporations. Although it holds one CFLL license, it is operating in violation of Financial Code sections 22104, 22153 and 22154 and California Code of Regulations section 1550.

Based upon the foregoing findings, the Commissioner is of the opinion that FDR, Freedom Debt Relief, Freedom Debt Relief, Inc., Freedom Debt Relief, LLC, Freedom Financial Network, LLC; Freedom Tax Relief, LLC, Bills.com, Inc.; Bills.com, LLC; Bills.com, Alivio Holdings, LLC, Housser and Stroh and their affiliates, in concert or participation with others, have been engaging in business as a bill payer or prorater as defined in the Check Sellers, Bill Payers and Proraters Law without a license from the Commissioner and in violation of that law including overcharging consumers in violation of Financial Code sections 12314 and 12314.1.

/ / /

/ / /

State of California - Department of Corporations

State of California - Department of Corporations

1   The Commissioner is also of the opinion that Alivio Mortgage, LLC, in concert or

2   participation with affiliates or others has engaged in business in violation of the California Finance

3   Lenders Law.

4   Pursuant to Financial Code section 12103, the Commissioner hereby orders FDR, Freedom

5   Debt Relief, Freedom Debt Relief, Inc., Freedom Debt Relief, LLC, Freedom Financial Network,

6   LLC; Freedom Tax Relief, LLC, Bills.com, Inc.; Bills.com, LLC; Bills.com, Alivio Holdings, LLC,

7   Housser and Stroh and their affiliates, in concert or participation with others, to desist and refrain from

8   engaging in business as a bill payer and prorater unless and until they are licensed or exempt and from

9   violating Financial Code sections 12314 and 12314.1.

10   Pursuant to Financial Code section 22712, the Commissioner hereby orders Alivio Mortgage,

11   LLC and any and all officers, directors, employees, independent contractors, agents, and affiliates

12   operating on its behalf to desist and refrain from the following:

13       (1)  changing locations without notification to and the approval of the Commissioner;

14       (2)  failing to maintain minimum net worth of $25,000;

15       (3)  conducting business at a place in which business other than making loans is engaged

16           in without either written notification to and the authorization of the Department; and,

17       (4)  using advertising without prior approval from the Commissioner.

18   The foregoing Orders are necessary, in the public interest, for the protection of consumers and

19   remain in full force and effect until further order of the Commissioner.

20   Dated:  May 29, 2008
       Los Angeles, California

21

22                          PRESTON DuFAUCHARD
                       California Corporations Commissioner

23

24

25   By_____

26

27              ALAN S. WEINGER
           Lead Corporations Counsel
           Enforcement Division

28

# EXHIBIT B

**DEBT** RESOLUTION
P A R T N E R S

---

## ENROLLMENT FORM CHECK LIST

**CLIENT NAME (S):**   William Ryan Crosley

**CLIENT ADDRESS:**   2515 Williams Grant St

**CITY, STATE, ZIP:**   Sugarland, TX, 77479

**CLIENT PHONE NUMBERS:**   Day: (713) 447-8757          Eve: (281) 980-7107

**CLIENT EMAIL:**   rynoag@gmail.com

**AGENT NAME & AFFILIATION:**   John Lehmann   Senior Debt Consultant

**AGENT PHONE:**   Phone number: (949) 732-5244   Fax number: (949) 732-5264

**GROSS DEBT AMOUNT: $**   $108,858

**ESTIMATED MONTHLY DRAFT & ESTIMATEDNUMBER OF MONTHS:**   $1,860 / 35.9  Estimated Months

**DAY OF DEBIT (check one):**  1st ☐   7th ☐   15th ☐   22nd ☐   28th ☐

**START DATE (MM/DD/YYYY):**   February 22, 2008

---

### PLEASE CHECK EACH ITEM THAT HAS BEEN COMPLETED

☑ Client Information & Initials – Page 3

☑ Start Date, Monthly Payment Amount, Initials- Page 4

☑ Signature(s), SSN, Date- Page 5

☑ All Creditor Information (Exhibit A), Initials- Page 6

☑ Fee Agreement (Exhibit B)- Page 7

☑ Power of Attorney- Page 8

☑ Special Purpose Account Application (SPAA) (Include Voided Check)- Page 9

☑ Truth In Services Form- Page 10

☑ Most Recent Statements for All Creditors

---

All stated numbers on this enrollment form are estimated numbers based on the information provided by the client & may change as needed by agreement by the client & DRP.

**Version 1.08.2008**

**CLIENT MUST ANSWER THE FOLLOWING QUESTIONS:**

|  | YES | NO |
|---|---|---|
| 1. Do you own your home? If yes how much equity do you have? **EQUITY $** | | ✓ |
| 2. You are aware that your credit rating is going to be impaired while you are in the program? | ✓ | |
| 3. You certify that you are in a state of financial hardship and have voluntarily chosen to stop paying your creditors? | ✓ | |
| 4. Have you filed Bankruptcy in the past 6 years? | | ✓ |
| 5. Any Large Purchases in the past 12 months? | | ✓ |
| 6. Any Cash Advances in the past 12 months? | | ✓ |
| 7. Any Balance Transfers in the past 12 months? | | ✓ |
| 8. Any Bank Accounts held with Creditors? | ✓ | |
| 9. I am aware that during the term of the program, I may not use credit cards or incur additional credit card debt? | ✓ | |
| 10. I am aware that I am including all my unsecured debt including any personal loans in the program? | ✓ | |

**CLIENT HARDSHIP NOTES** (write in space below):

**DEBT**RESOLUTION
P A R T N E R S

# Debt Resolution Partners, LLC

1875 S. Grant, Suite 400, San Mateo, California 94402
Office: (800) 544-7211  Fax: (650) 745-3311

## Debt Reduction Agreement

TO BE VALID, CONTRACT MUST BE COMPLETED IN FULL AND
RETURNED TO DRP BY:

**1. Parties:** This Debt Reduction Agreement (the
"Agreement") is made as of **Wednesday, February 06,
2008** by and between Debt Resolution Partners, LLC,
a Delaware Limited Liability Company, with its principal
offices located at 1875 S. Grant, suite 400, San Mateo,
CA 94402 ("DRP") and **William Ryan Crosley**
("Client") residing at: **2515 Williams Grant** St,
Sugarland, TX, 77479.

**2. Scope of Agreement:** DRP will assist Client in
negotiating specified **unsecured** debts (the "Debts")
for settlement in full. Client understands that DRP
accepts only **unsecured** debts for reduction and that it
is Client's responsibility to ensure that all Debts
included in the DRP debt reduction program are
**unsecured**. DRP will act as an intermediary between
Client and Client's creditors (the "Creditors") for the
express purpose of attempting to negotiate with
creditors of Client with the intent of reducing Debts to
an amount that will enable the Client to pay the
reduced balance as full settlement of all debt. The
Debts and Creditors for which DRP will provide
services under this Agreement are listed in Exhibit A.
Client will provide the name, address, telephone
number and last billing statement from each Creditor to
DRP along with all other information DRP deems
necessary to assist it in negotiating resolution each
Debt.

**3. Not Included in Agreement: CLIENT
EXPRESSLY ACKNOWLEDGES THAT DRP DOES
NOT PROVIDE LEGAL, TAX OR INVESTMENT
ADVICE.** This Agreement covers only the
Debts/Creditors listed in Exhibit A and only unsecured
Debts owed to the Creditors as of the date of this
Agreement. Should Client desire DRP to assist in
resolving additional debts or debts arising after the
date of this Agreement, Client must enter into a
separate Agreement, and resolution of such additional
debts would be subject to the terms of that separate
Agreement. Client acknowledges and understands
that DRP does not provide legal advice. Legal advice
or representation must be provided by an attorney at
law of the Client's selection, licensed by the state
where the Client resides. Client understands and
agrees that DRP has not represented that it will advise
or assist Client in the modification, improvement or

correction of any credit entries contained on Client's
credit reports, nor that DRP can stop all collection
phone calls or correspondence. Client agrees that
DRP does not claim to be able to improve Client's
credit rating or credit report, nor remove any credit
reference on Client's credit report and that DRP has no
responsibility or obligation for any past, present or
future credit rating assigned by any of the Creditors or
for any information contained in any credit reporting
service. At all times, debt obligations remain those of
Client. DRP will not assume or pay any obligation of
Client, and will not attempt to extend the time in which
Client has to pay any creditor.



**4. Money-Back Guarantee:** DRP guarantees that it
will, during the Client's plan period, negotiate, reduce,
and deliver to Client a settlement offer from Client's
creditors or else DRP will refund the service fee paid (if
any) by Client to DRP which corresponds to the Debt
for which DRP was unable to reduce and obtain a
settlement offer. Under this provision, any debt for
which a settlement offer has not been obtained after 36
months shall be deemed "unable to be eliminated"
unless DRP agrees to extend such period of time.
**While results are expected to vary on a case-by-
case basis, DRP guarantees that upon completion
of the program, the total Service Fees paid by
Client to DRP will amount to no more than one-
third (1/3) of the total amount by which Client's
debt balances have been reduced.** The amount by
which Client's debt balances are reduced is calculated
as the total balances due at time of settlement minus
the amount paid by Client to Creditors as part of the
settlements arranged by DRP. DRP will refund any
portion of Client's Fees necessary to satisfy this
guarantee within fourteen (14) business days after
Client's completion of the program. This refund
guarantee is contingent upon Client meeting the
requirements of paragraph 10 and is the sole and
exclusive remedy of Client in connection with this
Agreement. This refund guarantee is void immediately

Client   Co-Client

Initials _____   _____

**DEBT**RESOLUTION
P A R T N E R S

upon termination or withdrawal of the Agreement by Client. DRP makes no predictions, promises, or representations as to the outcome of its services or the time that it may take to reduce or eliminate Client's Debts.



**5.  Responsibilities of Client:** Client agrees to be truthful and cooperative; to notify DRP promptly of any change of Client's telephone number or address; to fill out and return any and all papers and questionnaires supplied by DRP within five (5) business days; to provide any requested papers within five (5) business days, and to consider in good faith DRP's recommendations regarding any potential Debt settlements. Client expressly agrees to make timely payments for services rendered and to reimburse DRP for costs pursuant to paragraph 14 of this Agreement. Client agrees not to make any charges on any credit account listed in Exhibit A at any time after the application date in paragraph one of this Debt Reduction Agreement, so long as said Agreement remains in force and effect. Client understands that any charges made on credit accounts after the application date of this Agreement will impair negotiation services to be provided by DRP pursuant to the Agreement, and will have a negative impact on creditor settlements.

**6.  Authority and Responsibilities of DRP:** DRP shall hold client's personal information in the strictest confidence, except as is necessary in the course of DRP's performance of this Agreement. Specifically, Client authorizes DRP to: (a) disclose to any of the Creditors any information concerning Client's financial condition and status, including but not limited to income, debts, credits, earnings, and/or location information; and (b) obtain necessary financial information concerning Client from any of the Creditors. DRP will perform the duties described in this Agreement, will keep Client reasonably informed of progress in the pursuit of the Agreement's objectives, and will respond promptly to the Client's inquiries and communications.

**7.  Settlements:** DRP will inform the Client of the amounts and the terms and conditions of all written settlement agreements. All settlement payments will be made directly to creditors from Client's settlement account. Although DRP does not give tax advice, Client understands that Creditors may notify the IRS of any debt forgiveness which may be taxable to Client.

**8.  Governing Law; Severability:** This Agreement is governed by the laws of the State of California, without regard to the conflict of law rules of that state. If any provision of this Agreement is held to be unenforceable, the remainder of this Agreement shall remain in full force and effect.



> "Debt Resolution Partners helped me get rid of my high interest rate credit card debt and put me on the road to recovery. Now I am starting my own business and buying a home. Thanks Debt Resolution Partners!"
>
> *Katherine W.*
> *Small Business Owner*

**9.  Arbitration of Dispute:** IN THE EVENT OF ANY CONTROVERSY, CLAIM OR DISPUTE BETWEEN THE PARTIES ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF, INCLUDING THE TERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE DETERMINED BY ARBITRATION IN SAN FRANCISCO, CALIFORNIA OR IN THE COUNTY IN WHICH THE CONSUMER RESIDES, IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA FOR AGREEMENTS TO BE MADE IN AND TO BE PERFORMED IN CALIFORNIA. THE PARTIES AGREE, THE ARBITRATION SHALL BE ADMINISTERED BY THE AMERICAN ARBITRATION ("AAA") PURSUANT TO ITS RULES AND PROCEDURES AND AN ARBITRATOR SHALL BE SELECTED BY THE AAA. THE ARBITRATOR SHALL BE NEUTRAL AND INDEPENDENT AND SHALL COMPLY WITH THE AAA CODE OF ETHICS. THE AWARD RENDERED BY THE ARBITRATOR SHALL BE FINAL AND SHALL NOT BE SUBJECT TO VACATION OR MODIFICATION. JUDGMENT ON THE AWARD MADE BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION OVER THE PARTIES. IF EITHER PARTY FAILS TO COMPLY WITH THE ARBITRATOR'S AWARD, THE INJURED PARTY MAY PETITION THE CIRCUIT

Client   Co-Client

Initials _____   _____

**DEBT**RESOLUTION
P A R T N E R S

COURT FOR ENFORCEMENT. THE PARTIES AGREE THAT EITHER PARTY MAY BRING CLAIMS AGAINST THE OTHER ONLY IN HIS/HER OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, THE PARTIES AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS OF MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF REPRESENTATIVE OR CLASS PROCEEDINGS. THE PARTIES SHALL SHARE THE COST OF ARBITRATION, INCLUDING ATTORNEY'S FEES, EQUALLY. IF THE CONSUMERS SHARE OF THE COST IS GREATER THAN $1,000 (ONE-THOUSAND DOLLARS),THE COMPANY WILL PAY THE CONSUMERS SHARE OF COSTS IN EXCESS OF THAT AMOUNT. IN THE EVENT A PARTY FAILS TO PROCEED WITH ARBITRATION, UNSUCCESSFULLY CHALLENGES THE ARBITRATOR'S AWARD, OR FAILS TO COMPLY WITH THE ARBITRATOR'S AWARD, THE OTHER PARTY IS ENTITLED TO COSTS OF SUIT, INCLUDING A REASONABLE ATTORNEY'S FEE FOR HAVING TO COMPEL ARBITRATION OR DEFEND OR ENFORCE THE AWARD.

**10. Funding Necessary:** Client recognizes Client's responsibility to obtain sufficient funds to make settlement payments to Creditors and that the Debt reductions are contingent on this funding. DRP may not be able to finalize a negotiated lump sum Debt settlement until Client can prove that Client has sufficient funds to pay the settlement in full, including applicable service fees.

**11. Non-Payment Election:** Client certifies that Client is currently in a verifiable state of financial hardship. Client is now unable to pay or unable to continue to pay minimum monthly payments on Debts to Creditors without extreme severe hardship, if at all. Client has voluntarily chosen not to continue to attempt minimum monthly payments to creditors.

**12. Potential Effects:** Client understands that not making further monthly payments to creditors will cause Client's credit report to be negatively affected. The negative impact may include unpaid, late, uncollected or charged-off entries on Client's record. Although DRP does not give legal advice, Client further understands that if Client does not make regular payments to creditors or if creditors are unwilling to accept a settlement, added interest, late fees, delinquencies, collection efforts, and legal action could result. After full awareness and consideration of these

possibilities, Client wishes to proceed with the terms and conditions of this Agreement.



**13. Client Budget:** Beginning on **February 22, 2008**, Client agrees to budget **$1,860** per month. These funds are to be made available each month for transfer into Client's Special Purpose Account ("SPA"), which will be opened by Client per the Authorization to Debit Bank Account which is attached with this Agreement. Funds in Client's SPA will accrue to eventually be used for the settlement of Client's debts and for the payment of DRP's fees. Funds to be used for settling Client's debts to creditors will be distributed from Client's SPA directly to creditors after each settlement is finalized. Funds to be used for payment of DRP fees will be paid via electronic debit or automatic check relay from Client's SPA in accordance with schedule set forth in paragraph 14 and detailed in Exhibit B.

---

### All Fees Listed Below are Included as Part of Client's Single Monthly Payment

For the first 3 months, beginning on **February 22, 2008**, Client will pay Retainer Fees of $1,814.30 each month. Then, for the next 15 months beginning on **May 22, 2008**, Client will pay Service Fees of $725.72 each month, until the total Retainer and Service Fees of approximately 15.0% of debt are paid. If Client successfully completes program before all Fees are paid, any remaining Fees will become payable at time of program completion.

---

Client    Co-Client
Initials _ZC_    _____

**DEBT**RESOLUTION
PARTNERS

**14. Payment of Fees:** Client hereby agrees to pay a Retainer Fee equal to 5.0% of debt and a Service Fee equal to 10.0% of debt. All Retainer and Service Fees are included as part of Client's single monthly payment, and are not in addition to Client's monthly payment. Client understands that all fee calculations mentioned in this Agreement and in other documents are estimates calculated using the amount of the Debts the Client has listed in Exhibit A. To pay Retainer and Service fees, Client authorizes automatic withdrawals each month via electronic debit or automatic check relay from Client's SPA in the amounts mutually agreed upon and stated below and detailed in Exhibit B.

**15. Withdrawal:** Either Party may discharge the other at any time by written notice. Client understands that any request to terminate this Agreement and withdraw from the DRP program must be made in writing and received by DRP at least five (5) business days prior to any scheduled electronic debit in order to stop such debit. In certain circumstances, DRP may, at its sole discretion, agree to accept verbal termination notice (over the phone, subject to identity verification, among other things) from the Client. Client understands that if Client terminates this Agreement, all fees paid by Client up to the date of withdrawal are non-refundable. Client understands that the Retainer Fee is due in full upon delivery of signed Agreement to DRP to cover initial expenses incurred by DRP. For the benefit of Client, DRP permits Client to pay the Retainer Fee over the first 3 months. In the event that Client fails to make any payment as set forth in this Agreement, then DRP's money-back guarantee described in paragraph 4 becomes null and void, and DRP will have the right to terminate the Agreement without any refund obligation to Client.

**16. Modifications or Amendments:** No amendment, change or modification of this Agreement shall be valid unless in writing and signed by all the Parties hereto, provided, however, that DRP may change any term of this Agreement, or add any additional term to this Agreement, by providing Client with fifteen (15) days' advance written notice of such change.

I represent that I have read, understand, and agree to be bound by the terms of this Debt Reduction Agreement in its entirety. I acknowledge that this Debt Reduction Agreement has been explained to my full satisfaction, and that I have no unanswered questions about the Debt Reduction Agreement.

_____
Client Signature

2/12/08
Date

_____
Co-Client Signature

_____
Date

**You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction listed in paragraph 1 above. See the attached notice of cancellation form for an explanation of this right.**



---

**PRIVACY POLICY DISCLOSURE**

DRP recognizes that your financial information is personal. We use and share information about you to perform our obligations under the Debt Reduction Agreement, and for related purposes, or as permitted or required by law. We may also share information about you with a successor in interest of DRP in connection with a merger, acquisition or corporate consolidation of DRP in which DRP is not the surviving entity or in connection the sale of all or substantially all of the assets of DRP. We are careful to use only accurate, current, and complete information. We will correct any erroneous information quickly if you so request. We are also careful to protect the security of your information from third parties and unauthorized employees. This privacy policy is subject to change. Please call us at (800) 544-7211 or fax us at (650) 745-3311 if you wish to opt-out or have any financial privacy concerns.

Client   Co-Client
Initials _____  _____

**DEBT**RESOLUTION
P A R T N E R S

# Exhibit A
## Enrolled Creditors

| Name of Current Creditor | Original Creditor (if different) | Account # | Type of Debt | Approximate Balances |
|---|---|---|---|---|
| BOA/MBNA/FIA | | 5490353222037185 | Credit Card | $68,347 |
| WELLS FARGO | | 6619059172 | Unsecured Loan | $24,861 |
| WELLS FARGO | | 66192630470001 | Unsecured Loan | $15,650 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | ESTIMATED TOTAL DEBT | $108,858 |

**PLEASE FILL IN MISSING ACCOUNT NUMBERS FOR EACH ACCOUNT LISTED ABOVE – WE WILL NEED THESE TO CONTACT YOUR CREDITORS

*** PLEASE <u>DO NOT ADD CREDITORS</u> TO THE ABOVE LIST. IF YOU HAVE ADDITIONAL CREDITORS TO INCLUDE, PLEASE CALL – WE WILL NEED TO REDRAFT THE AGREEMENT FOR YOU

Initials: Client____ Co-Client_____



**DEBT**RESOLUTION
P A R T N E R S

# Exhibit B
# Direct Debit Authorization

## ***ALL FEES LISTED BELOW ARE INCLUDED AS PART OF YOUR MONTHLY PAYMENT***

| | Amount | Debit Date | | | Amount | Debit Date | | | Amount | Debit Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $ 1,814.30 | 02/22/08 | 13 | $ | 725.72 | 02/22/09 | 25 | $ | - | |
| 2 | $ 1,814.30 | 03/22/08 | 14 | $ | 725.72 | 03/22/09 | 26 | $ | - | |
| 3 | $ 1,814.30 | 04/22/08 | 15 | $ | 725.72 | 04/22/09 | 27 | $ | - | |
| 4 | $ 725.72 | 05/22/08 | 16 | $ | 725.72 | 05/22/09 | 28 | $ | - | |
| 5 | $ 725.72 | 06/22/08 | 17 | $ | 725.72 | 06/22/09 | 29 | $ | - | |
| 6 | $ 725.72 | 07/22/08 | 18 | $ | 725.72 | 07/22/09 | 30 | $ | - | |
| 7 | $ 725.72 | 08/22/08 | 19 | $ | - | | 31 | $ | - | |
| 8 | $ 725.72 | 09/22/08 | 20 | $ | - | | 32 | $ | - | |
| 9 | $ 725.72 | 10/22/08 | 21 | $ | - | | 33 | $ | - | |
| 10 | $ 725.72 | 11/22/08 | 22 | $ | - | | 34 | $ | - | |
| 11 | $ 725.72 | 12/22/08 | 23 | $ | - | | 35 | $ | - | |
| 12 | $ 725.72 | 01/22/09 | 24 | $ | - | | 36 | $ | - | |

*Fees are spread out over time for benefit of client. In the event that Client successfully completes program before all Fees are paid, any remaining Fees will become due and payable at time of program completion.*

I/We authorize fee payments to Debt Resolution Partners, LLC ("DRP") from designated Special Purpose Account in accordance with the schedule listed above. I/We understand that the debits are for the payment of DRP's Retainer and Service fees. I/We understand that DRP's fees are included as a part of the total monthly payment – **not** in addition to the monthly payment. This authority will remain in effect until, according to Paragraph 15 of this Agreement, I/We give notification to terminate this authorization five (5) days prior to the next specified debit date. I/We understand there will be a **$20** fee, which will be automatically charged to the "Primary Bank Account" account for any insufficient funds (NSF) transaction or draft modification.

| Client or Co-Client Signature: | X | Date: |
|---|---|---|
| Bank Account Owner Signature: (if different from above) | X | Date: |

# LIMITED POWER OF ATTORNEY

To Whom It May Concern:

I/We, **William Ryan Crosley**,
The undersigned (jointly and severally if more than one, hereinafter collectively "principal"), hereby make, constitute and appoint **Debt Resolution Partners, LLC**, its agents, assigns, and employs principal's true and lawful attorney to act for principal and in principal's name, place and stead and for principal's use and benefit to **CONTACT PRINCIPAL'S CREDITORS AND CREDITORS' AGENTS, REPRESENTATIVES AND EMPLOYS FOR THE PURPOSE OF NEGOTIATING FINANCIAL SETTLEMENT ARRANGEMENTS ON CREDITORS' CLAIMS OF INDEBTEDNESS BY PRINCIPAL IN FAVOR OF CREDITORS; AND/OR TO CONTACT ALL CREDIT REPORTING AGENCIES IN ORDER TO OBTAIN ALL CREDIT INFORMATION PERTAINING TO PRINCIPAL; AND/OR, SHOULD SUCH ACTION BE DEEMED NECESSARY AND APPROPRIATE, TO ISSUE ORDERS TO CEASE COMMUNICATION PER THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA) ON BEHALF OF CLIENT, AT THE SOLE DISCRETION OF ATTORNEY-IN-FACT.**

Principal hereby grants to said attorney-in-fact full power and authority to do and perform each and every act and thing which may be necessary, or convenient, in connection with any of the foregoing, as fully, to all intents and purposes, as principal might or could do if personally present, hereby ratifying and confirming all that our said attorney in fact shall lawfully do or cause to be done by authority hereof.

Please notate your records with the following change of address and telephone number:

> 1875 S. Grant St., Suite 400
> San Mateo, CA 94402
> (916) 649-3802

Whenever the context so requires, the singular number includes the plural.

Principal(s):

| | | | |
|---|---|---|---|
| Signature | Ryan Crosley / Printed Name | 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 / SSN# | 2/12/08 / Date |

| | | | |
|---|---|---|---|
| Co-Client Signature | Printed Name | SSN# | Date |

# AUTHORIZATION TO DEBIT BANK ACCOUNT

**Financial Institution Information**

Wells Fargo Bank N.A.

| Routing Number[1] | Account Number[2] |
|---|---|
| 1 1 1 9 0 0 6 5 9 | 5 9 4 3 3 8 3 6 3 7 |

**Customer Information**

Name (as it appears on check)

Ryan Crosley

| Address (as it appears on check) | City | State | Zip |
|---|---|---|---|
| 2515 Williams Grant | Sugar Land | TX | 77479 |

**Date of Debit**

| $1,860 | On or after the **22** day of each month until further notice |
|---|---|

**Check One:** ☑ Checking ☐ Savings

I herby authorize Global Client Solutions, LLC ("Global"), as an agent of Rocky Mountain Bank & Trust, to initiate debit entries to my account at the financial institution named above (my "Primary Bank Account"), in the amount(s) and on or after the date(s) set forth above, and to debit the same to my Primary Bank Account for the purpose of transferring funds to an account I am in the process of establishing with Rocky Mountain Bank and Trust. I represent that my Primary Bank Account exists; that I own it; and that I will maintain sufficient funds in it to permit the debits to clear on the applicable dates. I understand that I will incur a charge if any attempted debit is not immediately honored when presented. In addition, I understand that I may subsequently design-ate another account for the purpose of transferring funds to my account at Rocky Mountain Bank & Trust by contacting Global Customer Service in the manner provided for below; that I may also change the corresponding amounts and dates from time to time by contacting Global Customer Service in this manner; and that the representations I made above about My Primary Bank Account will apply to any other account that I designate for this purpose.

This authorization shall remain in full force and effect until I give a written termination notice to Global Custom Service in the manner provided for below that affords it a reasonable period of time to act on it. In addition, I understand that Global may terminate this authorization on behalf of Rocky Mountain Bank & Trust by providing me with a written notice at least ten (10) days prior to the actual termination.

**If you have any questions about anything regarding this Authorization please contact Global Customer Service immediately.**

| Applicant Signature | Date |
|---|---|
| | 2/12/08 |

| Co-Applicant Signature | Date |
|---|---|
| | |

**Contact Global Customer Service** -- toll-free at: (800) 398-7191 • by email at: customersupport@globalclientsolutions.com • by fax at: (866) 355-8228 or by mail at: Global Client Solutions, LLC 9820 E 41st Street, Suite 400 Tulsa, Oklahoma 74146.

[1] Routing Number is the 9-digit number that appears in bottom left-hand corner of your check.
[2] Account Number is to the right of the Routing Number and after the check number shown on the bottom of your check.

 **TASC Standard Disclosure Statement**

**Debt Resolution Partners (DRP)** provides consumers with a method of debt resolution known as debt settlement, and is a proud member of The Association of Settlement Companies [TASC]. The following disclosures are industry standards set in place by this association to keep consumers aware of the advantages and disadvantages of a debt settlement program.

## BY SIGNING BELOW, YOU UNDERSTAND:

1. You are enrolling into a debt settlement program after voluntarily seeking assistance from DRP. The goal you have set is to develop a program to negotiate mutually agreeable settlements between you and your creditor(s) for payment of certain unsecured debt(s) described as Enrolled Debts. While no specific results can be predicted or guaranteed; DRP specializes in the process of negotiations and settlement and will work to the fullest to realize the goal of the client. **DRP DOES NOT MAKE MONTHLY PAYMENTS TO YOUR CREDITORS.**

2. In entering into this AGREEMENT, you acknowledge that DRP will be undertaking any action solely in its capacity as your Non-Exclusive Agent and Attorney-in-Fact pursuant to the terms of the Customer Service Agreement and the related Limited Power of Attorney that you have signed. You acknowledge that DRP has not advised you to reduce or terminate payments to your creditors and you have been advised that DRP will not take any action that might be construed as interfering with the contractual relationships between you and your creditors.

3. In entering into this AGREEMENT, you represent that no enrolled creditor accounts are secured by collateral or cross collateralized with another account or property. Secured debt is debt for which the creditor has collateral in the form of a security interest in personal and/ or real property. Should you fail to make timely payments on a secured debt, the creditor is entitled to repossess the property and sell it. Cross-collateralized debt exists where security has been mortgaged and pledged to a creditor under a document that provides that the collateral not only secures primary obligations such as a mortgage or car, but also other debt that may include enrolled debt. A creditor may also have the right to offset your enrolled obligations against bank or other accounts maintained by that creditor in your name.

4. Most creditors and collectors negotiate with Consumer Debt Settlement Companies, but DRP cannot force the negotiations and cannot force creditors to accept a settlement. DRP does not make regular monthly payments to your creditors. Your creditors are likely to continue collection efforts on delinquent accounts while you are enrolled in a Debt Settlement Program. Such collection activities can include phone calls and letters, charging off accounts, and sending accounts to collection agencies or law firms for collection. DRP makes no claim that we will be able to stop these collection activities, but will continue to negotiate these accounts throughout the process. In most cases creditors and collectors will negotiate a payment program and /or debt settlement even IF a lawsuit has been filed.

5. Your Debt Settlement Program assumes an effort that will continue for many months. The time needed to produce a settlement depends on a number of factors. These may include: (a) The financial hardship, (b) the age and balance of the accounts that you owe your creditors, (c) the funds you have available to pay for a settlement and (d) the willingness of individual creditors to enter into debt settlement negotiations. While no guarantees can be given, generally the quicker you save money the sooner you will be in a position to reach your goals. However, each settlement must be acceptable to both you and your settling creditor.

6. The fees paid to DRP are intended to compensate us for our efforts and will only be refundable to the extent they have not been deemed to have been earned in the manner described in the Customer Service Agreement. These fees are NOT being set aside or held in escrow to fund debt settlements. Fees paid to a Debt Settlement Company such as DRP for its services will not be available to pay creditors.

7. You will be responsible for saving sufficient funds in an account you control to fund debt settlements that DRP will endeavor to negotiate on your behalf. You, and only you, will be in control of all settlement funds and under no circumstances will DRP have custody or control or access to the funds you set aside to fund settlements.

8. Since you have voluntarily decided to not make required minimum payments to your creditors you may be breaking the terms of your agreements with them. It is likely your actions will be reported to consumer reporting agencies as late, delinquent, charged-off or past due balances. Your creditor may also raise the interest rate on your account and impose other penalties. Your account balance will continue to grow as your creditor adds accrued interest, late fees, over-limit fees and penalties. After Settlement your creditors are obligated to properly report the status and outcome of the closed and settled account. It is the creditors' responsibility to properly report these items to the credit bureaus. A Debt Settlement Program may have an adverse effect on your credit report and credit score depending on your specific situation.

9. If your creditor settles your debt for more than $600 less than what you owed, the savings *may* be reported by your creditor to the IRS as Discharge of Indebtedness income. This is up to the sole discretion of the creditor. You may wish to consult your tax advisor to determine whether your individual circumstances may permit you to exclude any such Discharge of Indebtedness Income from your reportable income due to insolvency

10. The savings program that you have committed to reach your debt settlement goal is detailed in your Debt Reduction Program. Those summaries reflect the projected amount that we have estimated you will need to save to put yourself in a position to reach your goals. Actual settlement amounts, necessary savings and the period required to reach your goal may vary based on creditor actions and other factors that cannot be taken into account at this time.

11. Communications with creditors are handled on a case by case basis. In some instances, creditors will be notified immediately of your enrollment. In other instances, negotiations do not begin until several months after you enroll in a Debt Settlement Program. It is often the case that creditors will not want to spend time negotiating with DRP until you have saved up enough funds to make a reasonable initial offer. This can be 6 to 9 months (or more in some cases) after enrolling in DRP's program. After settling one debt, it may be months again until we are able to negotiate on the next account.

12. To summarize, each case is unique and results may vary. A Debt Settlement Program can be a very effective way to resolve your debt, but it is not a painless process and no guarantees can be given because the process is subject to factors that neither you nor DRP may be able to control. As with any type of debt repayment program, failure to complete a Debt Settlement Program is likely to have negative consequences on your financial situation.

Date: 2/12/08

Client Signature: 

Cosigner Signature:

## Notice of Right of Cancellation

DATE OF TRANSACTION: <u>Wednesday, February 06, 2008</u>

You may cancel this agreement, without any penalty or obligation, at any time before midnight of the third business day that begins the day after you agree to it by electronic communication or by signing it. To cancel this agreement during this period, send an e-mail to:

<u>terminations@freedomdebtrelief.com</u>

Or mail or deliver a signed, dated copy of this notice, or any other written notice to:

**ATTN: TERMINATIONS**
**Debt Resolution Partners**
**1875 South Grant St. Suite 450**
**San Mateo, Ca 94402**

Before midnight on the third business day following the Date of Transaction listed above.

If you cancel this agreement within the 3-day period, we will refund all money you already have paid us. You also may terminate this agreement at any later time, but we are not required to refund fees you have paid us.

If you want to cancel this transaction by mail, please detach the form below, and mail to the address above:

I HEREBY CANCEL THIS TRANSACTION:

_____
**Full Client Name**

_____
**Signature**

# EXHIBIT C



KERSHAW : CUTTER ⸱ RATINOFF | LLP

January 21, 2009

**VIA CERTIFIED MAIL**

DEBT RESOLUTION PARTNERS, LLC
4545 S. Wendler Dr., Suite 105
Phoenix, AZ 85003

To Whom It May Concern:

In compliance with the requirements of the California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*), we write on behalf of our client, William Ryan Crosley ("Claimant") and on behalf of all others similarly situated. Pursuant to Civil Code Section 1782, you are hereby notified of the following:

Claimant entered into a Debt Reduction Agreement with you and/or one of your related entities[1] on or about February 14, 2008. Under the terms of the agreement between you and Claimant, you were acting as a prorater pursuant to California Financial Code Section 12000 *et seq.* and, as such, were subject to the Check Sellers, Bill Payors, and Prorators Law (the "CSBPPL"). Your contracts violate the CSBPPL since you are not licensed to sell prorater services in California. Additionally, your contracts violate the CSBPPL since they seek to extract unconscionable and excessive fees and impose early termination penalties on consumers.

Your conduct as described herein violates section 1770(a)(17) of the CLRA, which prohibits the insertion of unconscionable provisions into consumer contracts.

On behalf of our client, William Ryan Crosley, and all others who are similarly situated, we hereby demand that you provide a complete refund of all amounts collected by you in fees, retainers, etc. to Claimant and all other similarly situated consumers. If within thirty (30) days after receipt of this Civil Code section 1782 notice, you have not

---

[1] For purposes of this letter, it is alleged that you were acting in concert with and/or were joint venturers with the following entities and individuals:

Debt Resolution Partners, LLC; Freedom Debt Relief aka Freedom Debt Relief, Inc., Freedom Debt Relief, LLC and FDR; Global Client Solutions, LLC; Rocky Mountain Bank & Trust; Andrew Housser and Bradford Stroh.

As such, the term "you" as referenced herein collectively refers to all of the above listed individuals.

401 Watt Avenue, Sacramento, CA 95864

Tel 916.448.9800, Toll Free 800.979.5279, Fax 916.669.4499

www.kcrlegal.com

January 21, 2009
Page 2

adequately addressed the wrongful conduct described above. Claimant will seek relief in
the form of damages and other appropriate relief under the Civil Code section 1780 for
himself and a class of all other similarly situated individuals.

     If you would like to discuss this issue further, please feel free to give us a call.

     Very truly yours,

     KERSHAW, CUTTER & RATINOFF LLP

     STUART C. TALLEY

SCT/lca
cc:    AGENT FOR SERVICE
      National Registered Agents
      638 North Fifth Ave.
      Phoenix, AZ 85003



KERSHAW | CUTTER   RATINOFF | LLP

January 21, 2009

**VIA CERTIFIED MAIL**

Andrew Housser, Agent for Service
FREEDOM DEBT RELIEF, INC.
1875 S. Grant St., Suite 400
San Mateo, CA  94402

Dear Mr. Housser:

In compliance with the requirements of the California Consumers Legal Remedies Act (Civil Code §§ 1750, et seq.), we write on behalf of our client, William Ryan Crosley ("Claimant") and on behalf of all others similarly situated.  Pursuant to Civil Code Section 1782, you are hereby notified of the following:

Claimant entered into a Debt Reduction Agreement with you and/or one of your related entities[2] on or about February 14, 2008.  Under the terms of the agreement between you and Claimant, you were acting as a prorater pursuant to California Financial Code Section 12000 et seq. and, as such, were subject to the Check Sellers, Bill Payors, and Prorators Law (the "CSBPPL").  Your contracts violate the CSBPPL since you are not licensed to sell prorater services in California.  Additionally, your contracts violate the CSBPPL since they seek to extract unconscionable and excessive fees and impose early termination penalties on consumers.

Your conduct as described herein violates section 1770(a)(17) of the CLRA, which prohibits the insertion of unconscionable provisions into consumer contracts.

On behalf of our client, William Ryan Crosley, and all others who are similarly situated, we hereby demand that you provide a complete refund of all amounts collected by you in fees, retainers, etc. to Claimant and all other similarly situated consumers.  If within thirty (30) days after receipt of this Civil Code section 1782 notice, you have not

---

[2] For purposes of this letter, it is alleged that you were acting in concert with and/or were joint venturers with the following entities and individuals:

Debt Resolution Partners, LLC; Freedom Debt Relief aka Freedom Debt Relief, Inc., Freedom Debt Relief, LLC and FDR; Global Client Solutions, LLC; Rocky Mountain Bank & Trust; Andrew Housser and Bradford Stroh.

As such, the term "you" as referenced herein collectively refers to all of the above listed individuals.

401 Watt Avenue, Sacramento, CA 95864

Tel 916.448.9800, Toll Free 800.979.5279, Fax 916.669.4499

www.kcrlegal.com

January 21, 2009
Page 2

adequately addressed the wrongful conduct described above, Claimant will seek relief in the form of damages and other appropriate relief under the Civil Code section 1780 for himself and a class of all other similarly situated individuals.

   If you would like to discuss this issue further, please feel free to give us a call.

                          Very truly yours,

                          KERSHAW, CUTTER & RATINOFF LLP


                          STUART C. TALLEY

SCT/lca



KERSHAW | CUTTER    RATINOFF | LLP

January 21, 2009

**VIA CERTIFIED MAIL**

Andrew Housser, Agent for Service
FREEDOM DEBT RELIEF, LLC
1875 S. Grant St., Suite 400
San Mateo, CA  94402

Dear Mr. Housser:

In compliance with the requirements of the California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*), we write on behalf of our client, William Ryan Crosley ("Claimant") and on behalf of all others similarly situated.  Pursuant to Civil Code Section 1782, you are hereby notified of the following:

Claimant entered into a Debt Reduction Agreement with you and/or one of your related entities[3] on or about February 14, 2008.  Under the terms of the agreement between you and Claimant, you were acting as a prorater pursuant to California Financial Code Section 12000 *et seq.* and, as such, were subject to the Check Sellers, Bill Payors, and Prorators Law (the "CSBPPL").  Your contracts violate the CSBPPL since you are not licensed to sell prorater services in California.  Additionally, your contracts violate the CSBPPL since they seek to extract unconscionable and excessive fees and impose early termination penalties on consumers.

Your conduct as described herein violates section 1770(a)(17) of the CLRA, which prohibits the insertion of unconscionable provisions into consumer contracts.

On behalf of our client, William Ryan Crosley, and all others who are similarly situated, we hereby demand that you provide a complete refund of all amounts collected by you in fees, retainers, etc. to Claimant and all other similarly situated consumers.  If within thirty (30) days after receipt of this Civil Code section 1782 notice, you have not

---

[3] For purposes of this letter, it is alleged that you were acting in concert with and/or were joint venturers with the following entities and individuals:

    Debt Resolution Partners, LLC; Freedom Debt Relief aka Freedom Debt Relief, Inc., Freedom Debt Relief, LLC and FDR; Global Client Solutions, LLC; Rocky Mountain Bank & Trust; Andrew Housser and Bradford Stroh.

As such, the term "you" as referenced herein collectively refers to all of the above listed individuals.

401 Watt Avenue, Sacramento, CA 95864

Tel 916.448.9800, Toll Free 800.979.5279, Fax 916.669.4499

www.kcrlegal.com

January 21, 2009
Page 2

adequately addressed the wrongful conduct described above, Claimant will seek relief in the form of damages and other appropriate relief under the Civil Code section 1780 for himself and a class of all other similarly situated individuals.

   If you would like to discuss this issue further, please feel free to give us a call.

                         Very truly yours,

                         KERSHAW, CUTTER & RATINOFF LLP

                         STUART C. TALLEY

SCT/lca



KERSHAW CUTTER RATINOFF LLP

January 21, 2009

**VIA CERTIFIED MAIL**

Timothy Merrick, Agent for Service
GLOBAL CLIENT SOLUTIONS, LLC
9820 E. 41st Street, Suite 400
Tulsa, OK 74146

Dear Mr. Merrick

In compliance with the requirements of the California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*), we write on behalf of our client, William Ryan Crosley ("Claimant") and on behalf of all others similarly situated. Pursuant to Civil Code Section 1782, you are hereby notified of the following:

Claimant entered into a Debt Reduction Agreement with you and/or one of your related entities[4] on or about February 14, 2008. Under the terms of the agreement between you and Claimant, you were acting as a prorater pursuant to California Financial Code Section 12000 *et seq.* and, as such, were subject to the Check Sellers, Bill Payors, and Prorators Law (the "CSBPPL"). Your contracts violate the CSBPPL since you are not licensed to sell prorater services in California. Additionally, your contracts violate the CSBPPL since they seek to extract unconscionable and excessive fees and impose early termination penalties on consumers.

Your conduct as described herein violates section 1770(a)(17) of the CLRA, which prohibits the insertion of unconscionable provisions into consumer contracts.

On behalf of our client, William Ryan Crosley, and all others who are similarly situated, we hereby demand that you provide a complete refund of all amounts collected by you in fees, retainers, etc. to Claimant and all other similarly situated consumers. If within thirty (30) days after receipt of this Civil Code section 1782 notice, you have not

---

[4] For purposes of this letter, it is alleged that you were acting in concert with and/or were joint venturers with the following entities and individuals:

Debt Resolution Partners, LLC; Freedom Debt Relief aka Freedom Debt Relief, Inc., Freedom Debt Relief, LLC and FDR; Global Client Solutions, LLC; Rocky Mountain Bank & Trust; Andrew Housser and Bradford Stroh.

As such, the term "you" as referenced herein collectively refers to all of the above listed individuals.

401 Watt Avenue, Sacramento, CA 95864

Tel 916.448.9800, Toll Free 800.979.5279, Fax 916.669.4499

www.kcrlegal.com

January 21, 2009
Page 2

adequately addressed the wrongful conduct described above, Claimant will seek relief in the form of damages and other appropriate relief under the Civil Code section 1780 for himself and a class of all other similarly situated individuals.

If you would like to discuss this issue further, please feel free to give us a call.

Very truly yours,

KERSHAW, CUTTER & RATINOFF LLP

STUART C. TALLEY

SCT/lca



KERSHAW CUTTER RATINOFF | LLP

January 21, 2009

**VIA CERTIFIED MAIL**

Douglas L. McClure, Agent for Service
ROCKY MOUNTAIN BANK AND TRUST
755 Cheyenne Meadows
Colorado Springs, CO 80906

Dear Mr. McClure:

In compliance with the requirements of the California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*), we write on behalf of our client, William Ryan Crosley ("Claimant") and on behalf of all others similarly situated. Pursuant to Civil Code Section 1782, you are hereby notified of the following:

Claimant entered into a Debt Reduction Agreement with you and/or one of your related entities[5] on or about February 14, 2008. Under the terms of the agreement between you and Claimant, you were acting as a prorater pursuant to California Financial Code Section 12000 *et seq.* and, as such, were subject to the Check Sellers, Bill Payors, and Prorators Law (the "CSBPPL"). Your contracts violate the CSBPPL since you are not licensed to sell prorater services in California. Additionally, your contracts violate the CSBPPL since they seek to extract unconscionable and excessive fees and impose early termination penalties on consumers.

Your conduct as described herein violates section 1770(a)(17) of the CLRA, which prohibits the insertion of unconscionable provisions into consumer contracts.

On behalf of our client, William Ryan Crosley, and all others who are similarly situated, we hereby demand that you provide a complete refund of all amounts collected by you in fees, retainers, etc. to Claimant and all other similarly situated consumers. If within thirty (30) days after receipt of this Civil Code section 1782 notice, you have not

---

[5] For purposes of this letter, it is alleged that you were acting in concert with and/or were joint venturers with the following entities and individuals:

> Debt Resolution Partners, LLC; Freedom Debt Relief aka Freedom Debt Relief, Inc., Freedom Debt Relief, LLC and FDR; Global Client Solutions, LLC; Rocky Mountain Bank & Trust; Andrew Housser and Bradford Stroh.

As such, the term "you" as referenced herein collectively refers to all of the above listed individuals.

401 Watt Avenue, Sacramento, CA 95864

Tel 916.448.9800, Toll Free 800 979.5279, Fax 916.669 4499

www.kcrlegal.com

January 21, 2009
Page 2

adequately addressed the wrongful conduct described above, Claimant will seek relief in the form of damages and other appropriate relief under the Civil Code section 1780 for himself and a class of all other similarly situated individuals.

If you would like to discuss this issue further, please feel free to give us a call.

Very truly yours,

KERSHAW, CUTTER & RATINOFF LLP

STUART C. TALLEY

SCT/lca



KERSHAW : CUTTER   RATINOFF : LLP

January 21, 2009

**VIA CERTIFIED MAIL**

Andrew Housser
1875 S. Grant St., Suite 400
San Mateo, CA  94402

Dear Mr. Housser:

      In compliance with the requirements of the California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*), we write on behalf of our client, William Ryan Crosley ("Claimant") and on behalf of all others similarly situated.  Pursuant to Civil Code Section 1782, you are hereby notified of the following:

      Claimant entered into a Debt Reduction Agreement with you and/or one of your related entities[6] on or about February 14, 2008.  Under the terms of the agreement between you and Claimant, you were acting as a prorater pursuant to California Financial Code Section 12000 *et seq.* and, as such, were subject to the Check Sellers, Bill Payors, and Prorators Law (the "CSBPPL").  Your contracts violate the CSBPPL since you are not licensed to sell prorater services in California.  Additionally, your contracts violate the CSBPPL since they seek to extract unconscionable and excessive fees and impose early termination penalties on consumers.

      Your conduct as described herein violates section 1770(a)(17) of the CLRA, which prohibits the insertion of unconscionable provisions into consumer contracts.

      On behalf of our client, William Ryan Crosley, and all others who are similarly situated, we hereby demand that you provide a complete refund of all amounts collected by you in fees, retainers, etc. to Claimant and all other similarly situated consumers.  If within thirty (30) days after receipt of this Civil Code section 1782 notice, you have not adequately addressed the wrongful conduct described above, Claimant will seek relief in

---

[6] For purposes of this letter, it is alleged that you were acting in concert with and/or were joint venturers with the following entities and individuals:

    Debt Resolution Partners, LLC; Freedom Debt Relief aka Freedom Debt Relief, Inc., Freedom Debt Relief, LLC and FDR; Global Client Solutions, LLC; Rocky Mountain Bank & Trust; Andrew Housser and Bradford Stroh.

As such, the term "you" as referenced herein collectively refers to all of the above listed individuals.

401 Watt Avenue, Sacramento, CA 95864

Tel 916.448.9800, Toll Free 800.979.5279, Fax 916.669.4499

www.kcrlegal.com

January 21, 2009
Page 2

the form of damages and other appropriate relief under the Civil Code section 1780 for himself and a class of all other similarly situated individuals.

     If you would like to discuss this issue further, please feel free to give us a call.

           Very truly yours,

           KERSHAW, CUTTER & RATINOFF LLP

           STUART C. TALLEY

SCT/lca



KERSHAW : CUTTER    RATINOFF ¦ LLP

January 21, 2009

**VIA CERTIFIED MAIL**

Bradford Stroh
1875 S. Grant St., Suite 400
San Mateo, CA 94402

Dear Mr. Stroh:

In compliance with the requirements of the California Consumers Legal Remedies Act (Civil Code §§ 1750, *et seq.*), we write on behalf of our client, William Ryan Crosley ("Claimant") and on behalf of all others similarly situated. Pursuant to Civil Code Section 1782, you are hereby notified of the following:

Claimant entered into a Debt Reduction Agreement with you and/or one of your related entities[7] on or about February 14, 2008. Under the terms of the agreement between you and Claimant, you were acting as a prorater pursuant to California Financial Code Section 12000 *et seq.* and, as such, were subject to the Check Sellers, Bill Payors, and Prorators Law (the "CSBPPL"). Your contracts violate the CSBPPL since you are not licensed to sell prorater services in California. Additionally, your contracts violate the CSBPPL since they seek to extract unconscionable and excessive fees and impose early termination penalties on consumers.

Your conduct as described herein violates section 1770(a)(17) of the CLRA, which prohibits the insertion of unconscionable provisions into consumer contracts.

On behalf of our client, William Ryan Crosley, and all others who are similarly situated, we hereby demand that you provide a complete refund of all amounts collected by you in fees, retainers, etc. to Claimant and all other similarly situated consumers. If within thirty (30) days after receipt of this Civil Code section 1782 notice, you have not adequately addressed the wrongful conduct described above, Claimant will seek relief in

---

[7] For purposes of this letter, it is alleged that you were acting in concert with and/or were joint venturers with the following entities and individuals:

Debt Resolution Partners, LLC; Freedom Debt Relief aka Freedom Debt Relief, Inc., Freedom Debt Relief, LLC and FDR; Global Client Solutions, LLC; Rocky Mountain Bank & Trust; Andrew Housser and Bradford Stroh.

As such, the term "you" as referenced herein collectively refers to all of the above listed individuals.

401 Watt Avenue, Sacramento, CA 95864

Tel 916.448.9800, Toll Free 800.979.5279, Fax 916.669.4499

www.kcrlegal.com

January 21, 2009
Page 2

the form of damages and other appropriate relief under the Civil Code section 1780 for himself and a class of all other similarly situated individuals.

If you would like to discuss this issue further, please feel free to give us a call.

Very truly yours,

KERSHAW, CUTTER & RATINOFF LLP

STUART C. TALLEY

SCT/lca